UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D.J.C.V, a minor, and Mr. C.

Petitioners,

vs.

U.S. Immigration and Customs
Enforcement ("ICE"), et al.,

Respondents.

Case No. 1:18-cv-09115

**DECLARATION OF KRISTIAN BRANNON**

I, Kristian Brannon, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1.    I am a Federal Field Specialist (FFS) for the Office of Refugee Resettlement (ORR), a component of the Administration for Children and Families (ACF) within the United States Department of Health and Human Services (HHS).  I have held the position of Federal Field Specialist since 2015.  I have worked in child welfare approximately since 2005.  I am currently located in New Jersey.  I have a master's degree in the field of social work.

2.    I am the FFS who oversees Lutheran Social Services of New York, an ORR provider.  I have the authority to approve the release of unaccompanied alien children (UACs) from Lutheran Social Services of New York, in accordance with ORR policies and procedures.

3.    The following statements are based on my personal knowledge, information acquired by me in the course of performing my official duties, and information contained in ORR records.

4.    On May 2, 2018, D.J.C.V. was admitted into ORR care at Lutheran Social Services of New York.  D.J.C.V. is currently 2 years old.

5.    Due to D.J.C.V.'s age, he was placed with a foster parent on a full time basis. D.J.C.V. has weekly meetings with his case manager and clinician to evaluate his progress and to ensure his mental and physical well-being.

6.    My understanding is that after being admitted to ORR care, D.J.C.V.'s biological mother in Honduras was immediately contacted.  Video conference calls and phone calls have been facilitated since May in order to maintain connection between D.J.C.V. and his mother and to further develop their relationship.

7.    Reports show that D.J.C.V. presents euthymic and is in a calm mood while in care.  He is comfortable in the program and has developed good relationships with his foster parent and staff.

8.    The clinician has been working to further D.J.C.V.'s development in social skills, motor skills, and language.  Reports show that D.J.C.V. has not presented with any health or behavioral concerns.

9.    While D.J.C.V. has been in ORR care, the provider has been making an ongoing assessment whether there is a suitable sponsor.  My understanding is that Mr. C.'s sister was contacted in May as a potential sponsor but indicated at that time she was only willing to sponsor D.J.C.V. if Mr. C. remains in the United States.

10.    My understanding is that D.J.C.V.'s biological mother expressed desire for him to be repatriated back to Honduras.  In August, D.J.C.V.'s mother submitted a copy of a

handwritten letter stating the same.  My understanding is that D.J.C.V.'s case manager requested an original notarized letter documenting D.J.C.V.'s mother's wishes.  This was not submitted.  My understanding is that on October 10, 2018, D.J.C.V.'s mother renewed her wishes during a phone call with the case manager.

11.    My understanding is that after being detained in adult detention centers, Mr. C. was released on bond on October 10, 2018.  He submitted a sponsor application packet on October 11, 2018.  Mr. C. has indicated that he plans on living with his sister in Austin, Texas.

12.    Mr. C.'s sponsor application is currently being processed, following ORR release procedures as well as the requirements of TVPRA.  Due to D.J.C.V.'s young age, the assessment may include a discretionary home study.  ORR cannot release a child to any person, including a parent, without making an assessment that the proposed sponsor is capable of providing for the child's physical and mental well-being.

Executed on October 15, 2018.


Kristian Brannon