UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D.J.C.V et al.<br><br>*Petitioners,*<br><br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"); et al.,<br><br>*Respondents.* | **Case No. 18-cv-09115**<br>**(VC) (GG)** |

# DECLARATION OF CAROLYN SILANE, ESQ. IN SUPPORT OF PETITIONERS' APPLICATION FOR AN ORDER TO SHOW CAUSE

Pursuant to 28 U.S.C.§ 1746, Carolyn Silane, Esq., hereby declare as follows:

1. I am an attorney duly admitted to practice before this Court. I represent Petitioners Mr. C. and D.J.C.V. in this above-captioned action.

2. Representatives of the Office of Refugee Resettlement ("ORR") have been aware of this case, and have had background information regarding Mr. C. for months now. On July 19, 2018, ORR stated that it had D.J.C.V.'s birth certificate, which lists Mr. C. as the child's father, and that the birth certificate had been verified. On July 27 and August 16, I spoke with ORR representatives regarding Mr. C.'s criminal history – a single misdemeanor charge from 2010 – about which they were clearly aware. The minutes from this proceeding are attached hereto as Exhibit A. On August 7, 2018, I provided a copy of Mr. C.'s birth certificate to ORR at their request.

3. Members of my firm and/or I have spoken with ORR at least five times about this case (July 19, July 23, July 27, August 1, and August 16) and have been in contact via email,

offering numerous times to provide any needed documentation. On many occasions, we have made it clear that Mr. C. intended to seek custody of D.J.C.V. upon his release from immigration custody. I also provided an update in the case to ORR on September 10, again stating that we were pursuing a number of avenues to have Mr. C. released in order to care for D.J.C.V.

4. During a call with the Department of Justice ("DOJ") on August 17, 2018, Nicole Murley of the DOJ informed me that the Department of Homeland Security was "willing to reunify and remove" Mr. C. and D.J.C.V. if Mr. C. elected that option.

5. On August 23, 2018, Ms. Murley wrote in an email to me that "DHS will reunify for the purposes of removal." Attached hereto as Exhibit B is a true and correct copy of that email (the previous email in the chain has been removed due to references to information protected by court order).

6. On August 23, 2018, I was present when Mr. C. provided testimony under oath before a United States Citizenship and Immigration Services ("USCIS") Asylum Office. Mr. C. stated that he fled to the United States on April 30, 2018 with his son, D.J.C.V., to escape threats of imminent death from members of gangs that had kidnapped and held Mr. C. at gun point, threatening his life and the life of D.J.C.V., and threats from other gang members that had already killed multiple members of Mr. C.'s extended family.

7. During the same interview, Mr. C. informed the USCIS Asylum Officer that immediately upon encountering United States border officials, Mr. C. communicated his fear of returning to Honduras. He further stated that, on or about May 2, 2018, he and D.J.C.V. were forcibly separated by Respondents.

8. As a result of this interview, the USCIS Asylum Officer determined that Mr. C. has a "reasonable fear" of returning to Honduras, and Mr. C.'s case for protection under U.S. immigration law is continuing.

9. Throughout D.J.C.V.'s detention, the federally appointed Child Advocate issued a number of Best Interest Recommendations, the most recent of which is attached hereto as Exhibit C, recommending that D.J.C.V. be reunited with this father Mr. C. immediately and stating that D.J.C.V. is suffering continuing harm as long as he is not reunited with his father.

10. On October 5, 2018, Mr. C. was ordered by the Immigration Court to be released on $2,000 bond. The Court specifically found that Mr. C. was not a danger. The bond was posted on October 10, 2018, and Mr. C. was released from ICE custody the same day.

11. On October 9, 2018, ORR officials informed me that they would not release D.J.C.V. to his father's custody until a formal application was filled out, fingerprints and other documentation obtained from Mr. C. and all members of his household, and Mr. C. and these individuals were "processed" and "vetted." Also during that call, the child's federally appointed guardian *ad litem* stated that ORR's process, specifically the fingerprint processing, currently takes a significant amount of time, up to months, to complete. ORR conceded that the outside agency it uses to process fingerprints is backlogged.

12. ORR also stated during that call that it has waived the agency's policies and procedures in reuniting parents and children in connection with other litigation, such as for parents who were class members in *Ms. L. v. U.S. Immigration and Customs Enf't, et al.*, No. 3:18-cv-00428 (S.D. Cal Sept. 13, 2018).

13. The only reason that ORR has stated for the continuous separation of Mr. C. and his infant son D.J.C.V. is the agency's policies and procedures of "vetting" parents prior to reunification.

14. At my insistence, representatives of Lutheran Social Services of New York ("LSSNY") facilitated a supervised visit between Mr. C. and D.J.C.V. on October 11, 2018, which was scheduled to be for one hour. There was a tearful, extremely emotional, and joyful reunion between the two. However, LSSNY recently told me that they could not facilitate visitation/contact between father and son more than once per week. Although AUSA Michael Byars later told me on October 10 that more contact may be being "contemplated," I have received no definitive indications of more frequent visits, only that LSSNY is "working with our staff to schedule another sponsor visit for the minor."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 12th day of October, 2018

Carolyn Silane
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178

# EXHIBIT A

MINUTES REPORT
17TH JUDICIAL DISTRICT COURT

C-490617
DEF. NAME: C~~[redacted]~~
JUDGE:      JEROME J. BARBERA III
CHARGES:
    AGGRAVATED ASSAULT

---

C-490617
B
10/14/2010

AGGRAVATED ASSAULT
  THIS MATTER CAME UP THIS DAY FOR ARRAIGNMENT. THE DEFENDANT WAS PRESENT AND REPRESENTED BY MR. GARYLAND WALLIS, I.D.B. MS. JOSEFINA FONDAW WAS SWORN AS AN INTERPRETOR IN THIS MATTER. THE DEFENDANT WAS ARRAIGNED AND PLED "NOT GUILTY" HEREIN. THIS MATTER WAS ALLOTED TO DIVISION "C". THE COURT ORDERED THAT THIS MATTER BE FIXED FOR PRE-TRIAL ON OCTOBER 28, 2010 AT 9:00 A.M. BEFORE SAID DIVISION, WITHOUT FURTHER NOTICE.

C-490617
C
10/28/2010

AGGRAVATED ASSAULT
  DEFENDANT PRESENT AND REPRESENTED BY MR. GEORGE J. LEDET, JR. THIS MATTER CAME UP THIS DAY FOR A PRE-TRIAL. ALSO PRESENT WAS THE INTERPRETER, JAELY PUGH, WHO WAS DULY SWORN IN BY THE COURT. MR. LEDET WAIVED THE RE-READING OF THE BILL OF INFORMATION AND ENTERED A PLEA OF "GUILTY" ON BEHALF OF THE DEFENDANT. THE COURT SENTENCED THE DEFENDANT TO SERVE FORTY-EIGHT (48) DAYS IN THE PARISH PRISON WITH CRREDIT FOR TIME SERVED. THE COURT FURTHER ORDERED THAT THE DEFENDANT IS TO PAY THE $150.00 INTERPRETER FEE IN THIS MATTER. THE COURT FURTHER ORDERED THAT A REVIEW HEARING (FEE) IS FIXED FOR JANUARY 28, 2011, AT 9:00 A.M., BEFORE SAID DIVISION. THE DEFENDANT SIGNED THE SPANISH ACKNOWLEDGMENT OF ADVICE OF RIGHTS FORM IN OPEN COURT.

C-490617
C
01/28/2011

AGGRAVATED ASSAULT
  DEFENDANT ABSENT AND UNREPRESENTED BY COUNSEL. THIS MATTER CAME UP THIS DAY FOR A REVIEW HEARING. ON MOTION OF THE STATE, THE COURT ORDERED THAT A BENCH WARRANT BE ISSUED HEREIN, SETTING BOND ON SAID WARRANT IN THE SUM OF $5,000.00 AND MADE RETURNABLE ON THE FIRST PRE-TRIAL DAY AFTER EXECUTION OF THE WARRANT BEFORE DIVISION "C" IN THIBODAUX, LOUISIANA. (FEE)

C-490617
C
08/23/2018

AGGRAVATED ASSAULT
  THE COURT ORDERED THE BENCH WARRANT PREVIOUSLY ISSUED BE RECALLED AND VACATED.

THIS IS A TRUE COPY AND CORRECT COPY OF THE MINUTES.
OF THE 17TH JUDICIAL DISTRICT COURT
JUDGE JEROME J. BARBERA III, PRESIDING

*[signature]*

DEPUTY CLERK, 17TH JUDICIAL DISTRICT COURT
LAFOURCHE PARISH
SEPTEMBER 11, 2018

# EXHIBIT B

Silane, Carolyn A.

| | |
|---|---|
| From: | Murley, Nicole (CIV) <Nicole.Murley@usdoj.gov> |
| Sent: | Thursday, August 23, 2018 8:07 PM |
| To: | Silane, Carolyn A. |
| Subject: | RE: Parent not reunified, about to be transferred away from child |

[EXTERNAL EMAIL]
Carolyn,

The information on the spreadsheet is a reflection of the latest information HHS has and may not contain updated DHS info. DHS is not contesting Mr. C▉▉ parentage/family status with respect to D▉▉▉▉▉▉. As explained, Mr. C▉▉ cannot be housed him in an family residential center given the criminal conviction and, as such, he is not a Ms. L class member. DHS will reunify for the purposes of removal.

Thank you,

Nicole



1

# EXHIBIT C

THE YOUNG CENTER FOR IMMIGRANT CHILD'S RIGHTS
NEW YORK OFFICE

*via electronic mail*

September 12, 2018

Kristian Brannon
Federal Field Specialist
Administration for Child and Families
Mary E. Switzer Building, 330 C Street, SW
Washington, DC 20201
Kristian.Brannon@acf.hhs.gov

Linda Hyde, SDDO
U.S. DHS/ICE
201 Varick Street
New York, New York 10014
Linda.Hyde@ice.dhs.gov

Re:   **Supplemental Best Interests Recommendation for Separated Child
      D███████████████, A#████████ son of ███████ C███ A#████████**

Dear Ms. Brannon and Ms. Hyde:

The Young Center for Immigrant Children's Rights serves as the federally-appointed Child Advocate for D██████████████████, a detained unaccompanied toddler, pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA).[1] As Child Advocate, our role is similar to that of a guardian *ad litem*: to identify and represent ██████ best interests and to develop recommendations regarding his custody, detention, release, legal representation, and repatriation.

██████ is a two-year-old boy currently in ORR custody at Lutheran Social Services in New York (LSSNY). ██████ entered the United States with his father, ██████████, A# ██████████. At that time, DHS officially improperly separated ██████ from his father. Mr. C███ is currently detained at Orange County Correctional Facility. ██████ biological mother, Ms. R██████████████████ resides in Honduras. As of today, ██████ **has been separated from his father for 133 days. We write to reiterate our recommendation that ██████ be immediately released and reunified with his father, Mr. C███.[2] Based on our evaluation of all available information, there are no safety concerns prohibiting reunification, and every day of separation continues to harm ██████ health, well-being, and his relationship with his parents and family.**

We have been advised that ██████ remains separated from his father because of Mr. C███ misdemeanor conviction from 2010, a nonviolent offense with no implications of child endangerment that took place six years before ██████ birth. We do not have any information to suggest that this charge would present

---

[1] 8 U.S.C. § 1232(c)(6) (Westlaw through Pub. L. No. 115-182) (authorizing the Secretary of Health and Human Services "to appoint independent child advocates for child trafficking victims and other vulnerable unaccompanied alien child"). A copy of the Child Advocate Recommendation and Appointment Form is attached.
[2] The Young Center has filed three prior Best Interest Recommendations (July 3, 2018, July 18, 2018, & July 31, 2018), each recommending reunification and release of ██████ to Mr. C███.

85 Broad Street, 29th Floor New York, NY 10004
(646) 838-0229 · www.TheYoungCenter.org

a current threat to ▇▇▇ safety and well-being. All other evidence indicates that Mr. C▇▇ cares for and has worked to protect his son. Mr. C▇▇ has been a loving, stable parent and a primary caregiver for his son since birth. ▇▇▇ mother reports that ▇▇▇ and his father are very close, even closer than ▇▇▇ is to her. No family member or ORR foster care staff members have expressed <u>any</u> concern that Mr. C▇▇ had abused or neglected his son, or that he poses any type of safety risk to ▇▇▇. Furthermore, there is no evidence that raises trafficking concerns in this case.

Rather, continued separation poses unacceptable risks to ▇▇▇ health and well-being. ▇▇▇ separation from his father over the last five months has been traumatic and has taken a significant toll on ▇▇▇ health.[3] ▇▇▇ is very confused about why he is separated from his father, who he has not had contact with in months. He continues to struggle to make sense of life in an ORR shelter without either of his parents.

▇▇▇ needs his father's daily attention, care, and love. So long as this separation keeps ▇▇▇ from living and developing under his father's care, ▇▇▇ health, safety, and well-being will continue to suffer and will likely worsen. For all these reasons, we urge ORR and ICE to work together and reunify ▇▇▇ with Mr. C▇▇ his father, without delay. We further recommend that, until the government reunifies ▇▇▇ with his father, ORR and ICE coordinate to ensure that ▇▇▇ regularly visits Mr. C▇▇ in person.[4]

If you have any questions or concerns, please do not hesitate to contact us at 718▇▇▇ or ▇▇▇▇▇▇▇▇▇▇▇▇.

Sincerely,

Priscilla Monico Marín, Esq.
Staff Attorney, Child & Family Rights Project

Mari Dorn-Lopez, Esq.
Deputy Program Director

Encl.

cc:   Marivic Fields, Office of Refugee Resettlement
      Jill Volovar, Office of Refugee Resettlement
      Alexa Mutt, Case Manager, LSSNY
      Carolyn Silane, Esq., Morgan Lewis, Attorney for ▇▇▇▇▇▇▇ and ▇▇▇▇▇

---

[3] *See* Deborah Gross, Ellen Olshansky, and Sarah Oerther, "Toxic effects of stress on children separated from parents," THE HILL, June 18, 2018, *available at:* https://bit.ly/2JRqxzh; see also Colleen Kraft, "American Academy of Pediatrics Statement Opposing Separation of Children and Parents at the Border," May 8, 2018, *available at:* https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/StatementOpposingSeparationofChildrenandParents.aspx

[4] *See* U.S. IMMIGRATION AND CUSTOMS ENFOR'T, POLICY NO. 11064.2, DETENTION AND REMOVAL OF ALIEN PARENTS OR LEGAL GUARDIANS 4 (2017) ("In the event an alien parent or legal guardian is detained, ICE will facilitate a means of regular visitation between the parent and minor child(ren).").